George E. FARRELL, as Administrator de bonis non of the Estate of Wyand F. Doerner, Jr., deceased, et al., Plaintiffs-Appellants,

v.

PIEDMONT AVIATION, INC., The Boeing Company and United States of America, Defendants,

and

Rapidair, Inc., and Lanseair, Inc., Defendants-Appellees.

Nos. 444–456, Dockets 33123, 33135–33146.

United States Court of Appeals Second Circuit.

Argued March 25, 1969.

Decided April 29, 1969.

Michael P. Isbell, Denver, Colo., for appellant.

Michael T. Haley, Asst. Atty. Gen. (Duke W. Dunbar, Atty. Gen., and John P. Moore, Deputy Atty. Gen., Denver, Colo., on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

Lee S. Kreindler, New York City (Kreindler & Kreindler, New York City, Milton G. Sincoff and Gerald A. Robbie, New York City, of counsel), for plaintiffs-appellants.

John J. Martin, New York City (Bigham, Englar, Jones & Houston, New York City, Robert F. Ewald, New York City, of counsel), for Lanseair, Inc.

Walter E. Rutherford, New York City (Haight, Gardner, Poor & Havens, New York City), for Rapidair, Inc.

Edward F. Hayes, III, New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, P. G. Pennoyer, Jr. and Daniel J. O'Neill, New York City, of counsel), for Piedmont Aviation, Inc.

Benjamin E. Haller, New York City, for The Boeing Co.

Patricia M. Hynes, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Michael D. Hess, Asst. U. S. Atty., of counsel), for United States.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

These appeals are the latest fallout to reach this court from the much criticized decision in Seider v. Roth, 17 N.Y. 2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), which we have recently declined to declare unconstitutional on the facts presented in Minichiello v. Rosen-

berg and Stevens v. Tyng, (1968), adhered to by the court *en banc,* in 410 F.2d 106 (1969).

The action, brought in the District Court for the Southern District of New York, stemmed from the collision of a Boeing jet aircraft operated in commercial service by Piedmont Aviation, Inc., and a Cessna private aircraft owned by Lanseair, Inc. and operated by Rapidair, Inc. The crash occurred over North Carolina. All seventy-four passengers and five crew members of the Piedmont jet and the pilot and both passengers of the Cessna were killed. Plaintiffs are New York citizens who have been appointed as administrators of the estates of 13 passengers of the Piedmont aircraft; eight of these were citizens of Mississippi, one of Texas, two of Tennessee, and two of Maryland.[1] The defendants are Lanseair, Rapidair, Piedmont, Boeing and the United States. Lanseair and Rapidair are Missouri corporations not subject to *in personam* jurisdiction in New York. Piedmont and Boeing, also foreign corporations, apparently were. Since they do not have their principal places of business in New York or in the states of residence of any of the decedents, there was diversity as between the plaintiffs and the corporate defendants even if it be proper to go behind the citizenship of the administrators, as recently held in McSparran v. Weist, 402 F.2d 867 (3 Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). Jurisdiction over the claim against the United States was conferred by 28 U.S.C. § 1346(b).

Plaintiffs' problem was how to acquire jurisdiction in New York with respect to Lanseair and Rapidair. They sought to meet it by availing themselves of Seider v. Roth and attaching the liability insurance policies issued to Lanseair and Rapidair respectively by Federal Insurance Company and St. Paul Fire and Marine Insurance Company, both doing business in New York.[2] Lanseair, Rapidair and the two insurers responded with motions to vacate the attachments and to dismiss the action against the two defendants. In addition to challenging the basic constitutionality of Seider v. Roth, they asserted that the procedure was inapplicable to an action in which the true beneficiaries were non-residents. Motions were also made by Piedmont and the United States under 28 U.S.C. § 1404(a) to transfer the action to the Western District of North Carolina, where many other suits arising out of the accident are pending. On November 27, 1968, Judge Wyatt granted both sets of motions; on December 2 and 10, 1968, the clerk entered judgments dismissing the complaint as against Rapidair and Lanseair, respectively. Another panel of this court has declined to interfere with the order of transfer, Farrell v. Wyatt, 408 F.2d 662 (2 Cir. 1969). The instant appeals are from the vacating orders and the judgments of dismissal.

At the outset we note and reject a challenge to our appellate jurisdiction. Lanseair and Rapidair contend that Judge Wyatt's orders left undisturbed a service of *in personam* process attempted over them after the attachments had been obtained; that final dismissal of the action against them was effected only by an order of the District Court for the Western District of North Carolina after the transfer; that the orders here under attack are thus interlocutory; and that review of them can be had only by an appeal in the Fourth Circuit from the order of dismissal.

■ The argument flies in the face of the language of Judge Wyatt's orders. These not only vacated the attachments

1. Some of the decedents died intestate; others left wills. All the beneficiaries of the potential wrongful death recovery are also non-New Yorkers.

2. The policy limits were $250,000 for Federal and $300,000 for St. Paul, substantially less than the claims of the 13 plaintiffs in this action, not to speak of the many other persons killed whose representatives have sued in North Carolina and, we understand, elsewhere.

but, the judge having made the determination required by F.R.Civ.P. 54(b), directed the clerk to enter judgment dismissing the actions against the two defendants "for lack of jurisdiction over the person." The judgments subsequently entered conformed to this direction. The record does not disclose why Lanseair and Rapidair thought it necessary to obtain further orders in the Western District of North Carolina vacating the attempted *in personam* service, and plaintiffs have scant reason to appeal from these since they can now effect such service on Rapidair and Lanseair under the North Carolina long-arm statute, N.C.Gen.Stat. § 1–107.3. The issue of practical importance is whether in the North Carolina litigation plaintiffs are entitled to a preferred position with respect to Rapidair's and Lanseair's insurance coverage by virtue of the New York attachments. That issue was decided in the Southern District of New York prior to the transfer and this court would be the most appropriate place for review even if Judge Wyatt had merely

vacated the attachments and not entered orders of dismissal. Cf. Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). However, in light of the tenor of his orders appellants not only might but had to appeal from them here. We therefore proceed to the merits.

 Appellants' argument is straightforward—indeed, Judge Wyatt conceded it was "logical." Nothing in the New York attachment statute, CPLR § 6201(1), limits that remedy to residents. They say therefore that if Lanseair or Rapidair had owned tangible property in New York or had accounts in New York banks, the attachments would have been valid if made in a state court and consequently were so in a federal action, F.R.Civ.P. 4(e).[3] Seider v. Roth and its successor, Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), hold that the insurer's obligations to defend and to indemnify make the policy a "debt" attachable under § 6202. Q.E.D.[4]

3. Appellants recognize that a New York court could nevertheless dismiss the action on the ground of *forum non conveniens*. See Bata v. Bata, 304 N.Y. 51, 105 N.E.2d 623, 625 (1952); Vaage v. Lewis, 29 A.D.2d 315, 288 N.Y.S. 2d 521 (2d Dept. 1968). Assuming that a similar dismissal would be available to a federal court despite the remedy afforded by 28 U.S.C. § 1404(a), appellants say this would be improper in the instant case. A North Carolina statute, N.C.Gen.Stat. § 28–8(2), 28–173, requires any action for the death of an intestate decedent to be brought by a North Carolina resident appointed as administrator and this would defeat diversity since Piedmont is a North Carolina corporation. On the other hand the United States could not be sued in a North Carolina state court. Hence a New York federal court is the only one in which jurisdiction over all these defendants can be had in an action on behalf of decedents who died intestate. For reasons later indicated, we find it unnecessary to consider this. However, the facts do demonstrate the desirability of legislation that would permit—or, indeed, require—all claims arising out of a major airplane accident to be litigated in a single federal court. See S.

961, 91st Cong. 1st Sess., introduced by Senator Tydings, Feb. 7, 1969.

4. The parties have not discussed New York's statutory restriction on the maintenance of actions against foreign corporations. Business Corporation Law, McKinney's Consol.Laws c. 4, § 1314 provides that a New York resident or a domestic corporation may sue a foreign corporation in the state courts upon any claim, but a nonresident or a foreign corporation may sue another foreign corporation only when either the claim sued upon or the defendant corporation has specified connections with the state. See also General Corporation Law, McKinney's Consol.Laws, c. 23, §§ 224–25. This limitation, "reflecting this State's policy against lending its courts to the resolution of disputes between nonresident parties," Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1962), limits the subject-matter jurisdiction of the courts and cannot be waived by the defendant. Davis v. Julius Kessler & Co., 118 Misc. 292, 194 N.Y.S. 9 (Sup.Ct.1922); Fidan v. Austral American Trading Corp., 8 Misc. 2d 598, 168 N.Y.S.2d 27 (Sup.Ct.1957); Electronic Race Patrol, Inc. v. National

Whatever the conceptual beauty of the argument, it neglects the facts. If we pass the New York citizenship of the administrators for the moment, the action is by nonresidents against other nonresidents who have no contacts with New York, and arises out of an occurrence in another state. In truth the defendants own nothing in New York or at least nothing that they do not "own" to the same extent in every state; their insurers are bound to defend and indemnify them wherever they are sued, even in a state where the insurers are not doing business. Under such circumstances, where there are absolutely no New York contacts except for the doing of business by the insurers, we have the

gravest difficulty in understanding how New York could constitutionally call upon the insureds to respond or could impair by attachment rights the insurers would otherwise have to settle with other claimants.

■ Not reaching the constitutional issue, the district court pointed to statements in the two leading New York cases which it regarded as indicating that the Court of Appeals would limit *Seider* to suits by residents. Chief Judge Desmond wrote in *Seider* that there was "no policy reason against requiring the insurer to come in to New York and defend as to an accident which occurred in Vermont injuring New York residents," 17 N.Y.2d at 114, 269 N.Y.S.2d at 102, 216

Trailer Convoy, Inc., 191 F.Supp. 364 (S.D.N.Y.1961). The state courts have applied the restriction without regard to whether jurisdiction over the defendant was obtained *in personam* or by attachment *quasi in rem*. See Banque de France v. Supreme Court, 287 N.Y. 483, 41 N.E.2d 65, cert. denied, 316 U.S. 646, 62 S.Ct. 1279, 86 L.Ed. 1730 (1942); Gano-Moore Coal Mining Co. v. W. E. Deegans Coal Co., 214 App.Div. 634, 213 N.Y.S. 54 (1st Dept. 1925); Cala v. De Ridder, Ltda., 17 A.D.2d 729, 232 N.Y.S.2d 284 (1st Dept. 1962). The provision has been upheld against constitutional attack as a reasonable limitation on access to the courts, Douglas v. New York, N. H. & H. R.R., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929), and see Missouri ex rel. Southern Ry. Co. v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950), and a federal court sitting in a diversity case is bound to give it effect, see Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); First Nat'l Bank of Chicago v. United Air Lines, 190 F.2d 493 (7 Cir. 1951), rev'd on other grounds, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441 (1952)—although commentators have questioned both these propositions. See B. Currie & Schreter, Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities, 69 Yale L.J. 1323, 1346–49, 1379–91 (1960); Hart & Wechsler, The Federal Courts and the Federal System 668–72 (1953).

If the nonresident accident victims represented by these plaintiffs were alive and were suing on their own behalf, we

might thus be forced to conclude that Business Corporation Law § 1314 closed the federal courts' doors to them against appellees. It is a question of state law whether the action stands differently under that section simply because the victims have died and New York residents have been appointed to administer their estates. The state courts have long held, under § 1314 and its predecessors, that a resident to whom a claim has been assigned for the sole purpose of enabling him to bring suit may maintain an action in the state court although the assignor could not. See McCauley v. Georgia R. Bank, 239 N.Y. 514, 147 N.E. 175 (1924); Banque de France v. Supreme Court, *supra*; Cincis v. Seaboard Air Line Ry., 201 Misc. 887, 113 N.Y.S.2d 29 (Sup.Ct.1952). Apparently this holds true as long as the assignment on its face transfers title, without regard to the consideration paid or the use to be made of the proceeds of the claim. Segal Lock & Hardware Co. v. Markey, 124 N.Y.S.2d 181 (Sup.Ct.1953). We might expect the state courts to be equally willing to countenance avoidance of § 1314 by appointment of a resident administrator, although we have not found a decision that establishes this. Cf. Robinson v. Oceanic Steam Nav. Co., 112 N.Y. 315, 19 N.E. 625, 2 L.R.A. 636 (1889); Silberfeld v. Swiss Bank Corp., 183 Misc. 234, 50 N.Y.S.2d 838 (Sup. Ct.), aff'd, 268 App.Div. 984, 52 N.Y.S. 2d 583 (1st Dept. 1944). In the absence of a contrary indication we proceed on the assumption that the state courts would not hold this suit barred by § 1314.

N.E.2d at 315. In *Simpson* Chief Judge Fuld said "the State has a substantial and continuing relation with the controversy" in a case "where the plaintiff is a resident of the forum state and the insurer is present in and regulated by it," 21 N.Y.2d at 311, 287 N.Y.S.2d at 637, 234 N.E.2d at 672, and Judge Keating's concurrence rested on the assumed constitutionality of permitting a direct action against the insurer by a New York resident even for an out-of-state accident, 21 N.Y.2d at 312–314, 287 N.Y.S.2d at 638–640, 234 N.E.2d at 673. See also Vaage v. Lewis, 29 A.D.2d 315, 288 N.Y.S.2d 521 (2d Dept. 1968). Appellants respond that these observations were simply descriptive of the cases *sub judice* and that, when faced with the problem here presented, the Court of Appeals would feel bound to apply the attachment statutes as their letter requires. We doubt this. A court that could perform the "miracle" on CPLR 320(c) that was effected in the opinion denying reargument in Simpson v. Loehmann, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968), see Minichiello v. Rosenberg, *supra*, 410 F.2d at 109–110, 119–120, would scarcely shrink from the easier task of saying that a liability insurance policy was a "debt" only when the plaintiff was a resident or was suing for a New York accident. This would be particularly true if the Court of Appeals considered that such a restrictive construction was needed to save *Seider* from unconstitutionality or even from serious constitutional doubt. See, e. g., Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303 (1928); Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L.Ed. 851

(1929); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953); People v. Bell, 306 N.Y. 110, 114, 115 N.E.2d 821 (1954); Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 12 N.Y.2d 379, 389, 240 N.Y.S.2d 1, 190 N.E.2d 402, appeal dismissed, 375 U.S. 78, 84 S.Ct. 194, 11 L.Ed.2d 141 (1963). For reasons sufficiently indicated in Minichiello v. Rosenberg, *supra*, 410 F.2d at 109–110, 119–120 (concurring opinion of Judge Hays), and in this *opinion*, we are convinced that the constitutional doubt with respect to applying Seider v. Roth in favor of nonresidents would be exceedingly serious.[5] While that may be an understatement, it would be enough to dispose of this case if the plaintiffs were nonresidents who had suffered injuries or nonresident representatives of nonresidents who had been killed.

■ The only remaining argument, that the plaintiffs here are New York citizens, requires little discussion. There would be no basis in reason for different treatment of an action by a nonresident who suffered serious injuries or by a nonresident executor of a nonresident who was killed, on the one hand, and one by a New York citizen who had been appointed administrator of a nonresident decedent, on the other. The constitutional doubt arises from New York's lack of meaningful contact with the claim; a court of another state cannot supply this by picking a New Yorker as administrator of the estate of a nonresident who suffered fatal injury.

Affirmed.

5. Appellants urge that limitation of Seider v. Roth to New York residents may itself create a constitutional problem. For reasons indicated in Minichiello v. Rosenberg, *supra*, 410 F.2d at 110, n. 6, we see no basis for this where, as in that case, the only persons injured were residents or where, as here, nonreisdents have in-

voked *Seider* but no resident has. We have reserved the question of constitutionality where a resident seeks to utilize *Seider* to obtain what amounts to a preference over a nonresident. See Minichiello v. Rosenberg, 410 F.2d at 119 (*en banc*).