Barbara G. HOLZSAGER, Executrix of the Estate of Donald M. Holzsager, Deceased, and Barbara G. Holzsager, Individually, Plaintiffs,

v.

The VALLEY HOSPITAL, Defendant.

No. 76 Civ. 4258.

United States District Court,
S. D. New York.

Dec. 18, 1979.

Grutman & Schafrann, New York City, for plaintiffs; Norman Roy Grutman, Jewel H. Bjork, Richard E. Hahn, New York City, of counsel.

McHugh, Heckman, Smith & Leonard, New York City, for defendant; James M. Leonard, Robert P. Whelan, Janet D. Baker, New York City, of counsel.

LASKER, District Judge.

Barbara Holzsager brought this wrongful death action, on her own behalf and as the executrix of her husband's estate, against the Valley Hospital in Ridgewood, New Jersey, which treated and released her husband just before he died in December, 1974. The action was originally filed in New York Supreme Court, and personal jurisdiction over the hospital was obtained by attaching the obligations of its liability insurance carrier, which does business in New York, under the doctrine of *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). The hospital removed the action to this court, predicating federal subject matter jurisdiction on the diverse citizenship of the parties.

After removing the case to this court on diversity grounds, the hospital sought to have it dismissed for lack of federal subject matter jurisdiction, asserting that Holzsager was not, in fact, a resident of New York but of New Jersey. In the alternative, the hospital moved to transfer the case to the United States District Court for the District of New Jersey. The court found that Holzsager was a resident of New York, that trial of the action in New York would not be inconvenient, and denied the hospital's motion to dismiss or transfer. (Endorsement of March 18, 1977)

The hospital then moved again to transfer the case to the United States District Court for the District of New Jersey, on the grounds that in New Jersey it could implead the physician who had treated Mr. Holzsager at the hospital, who had since retired to California, where he was beyond the reach of New York's long arm statute, but not of New Jersey's. Concluding that it would be more convenient to try the case in New Jersey if all the defendants could be brought before a single tribunal there, the court granted the motion, and the case was transferred to the District of New Jersey. (Endorsement of September 30, 1977)

After the treating physician had been impleaded, the hospital again moved (in the District of New Jersey) to dismiss the complaint for lack of federal subject matter jurisdiction, this time on the grounds that the amount in controversy did not exceed $10,000., because any recovery against the hospital was limited to that amount by New Jersey's charitable immunity statute, N.J. Rev. Stat. § 2A:53A–7. Applying New Jersey law, Judge Meanor granted the motion. He held that the hospital was within the class of institutions protected by the statute, and, relying on *Deutsch v. Hewes Street Realty Corp.*, 359 F.2d 96, 100 (2d Cir. 1966) (dictum), *Oikarinen v. Alexian Brothers*, 342 F.2d 155, 155 (3d Cir. 1965), and *Trail v. Green*, 206 F.Supp. 896, 900–01 (D.N.J.1962), concluded that the court lacked subject matter jurisdiction over the case. Accordingly, Judge Meanor dismissed the hospital's third party action against the physician without prejudice, and "remanded" Holzsager's action against the hospital to the Southern District of New York "for appropriate action," No. 77–2128 (D.N.J.) (Order of April 13, 1978), with a suggestion that it would be appropriate further to remand the case to the state court from which it was originally removed, *id.* (Hearing of April 10, 1978, transcript at 15), returning the parties to the status they enjoyed when the suit was originally commenced, over a year and a half earlier.

After the case had returned to this court, but before any other action had been taken, Holzsager filed the present motion,[1] in which she seeks an order striking the hospital's ninth affirmative defense, which sets

---

1. In the interim, new counsel was substituted for Holzsager.

up the New Jersey charitable immunity statute as a bar to any recovery in excess of $10,000.[2] She argues that New York law governs this case, and that under New York law the limitation on the hospital's liability would not be recognized. In so moving, Holzsager directly challenges Judge Meanor's earlier ruling that federal subject matter jurisdiction is lacking.

▉ The hospital opposes Holzsager's motion, asserting that Judge Meanor's ruling bars reconsideration of the issue of subject matter jurisdiction, and the underlying issue of the applicability of New Jersey's charitable immunity statute. In addition, the hospital contests the court's personal jurisdiction over it. Although the hospital has neglected to move formally for an order dismissing the action on this ground, the questions raised have been fully briefed by both parties, and will be decided. The hospital's procedural motions have delayed consideration of the merits of this case for over three years—its failure to file a motion now should not be the occasion for further delay.[3]

## I.

▉ An initial question is whether this court has the authority, at this stage in the proceedings, to do anything other than re-

---

2. In addition, Holzsager moves to strike the hospital's fifth affirmative defense, which seeks dismissal of the action on the grounds of *forum non conveniens.* The question of the relative convenience of this forum was addressed on the hospital's two motions to transfer the action to New Jersey, and it was concluded that trial in this district would not be so inconvenient as to warrant transfer, let alone dismissal. The action was transferred only to allow the hospital to implead the treating physician. The fact that he was subject to suit in New Jersey but not in New York was considered sufficient reason to transfer the case to New Jersey under 28 U.S.C. § 1404(a), but it is no basis for dismissing the action. Accordingly, for the reasons stated in our endorsements of March 18 and September 30, 1977, this branch of Holzsager's motion is granted.

Finally, Holzsager seeks an order directing the hospital to proceed with a deposition noticed after her suit was retransferred to this district. At that time, the hospital took the position that there was no "viable action pending in the U. S. District Court for the Southern District of New York," and treated the deposition notice as a nullity. Notice of Motion, Exhibit O (letter of defendant's counsel dated January 26, 1979). The hospital's position was untenable: a valid order had been entered by the New Jersey court retransferring the case to this court, and no further order remanding the case or otherwise disposing of it had been issued. Since the case was clearly pending before this court, the hospital's attitude was unjustified. However, we assume that following our decision on this motion, discovery will proceed in an orderly manner, as provided in the Federal Rules of Civil Procedure. Since this relatively straightforward case has been so long delayed by procedural motions, counsel are urged to complete discovery as expeditiously as possible.

3. The hospital contends that Holzsager's motion is untimely and barred by laches. It is not.

Rule 12(f) provides that the court may strike an insufficient defense in a pleading "upon notice made by a party within 20 days after the service of the pleading upon him." The hospital argues that since Holzsager's motion to strike was not made within twenty days of service of the hospital's answer, the court cannot consider it. However, Rule 12(f) also provides that an insufficient defense can be stricken "upon the court's own initiative at any time," and this "has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1380 (1969); *see Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y.1974). In the circumstances of this case, it is appropriate to consider the issues raised by Holzsager's motion. They would probably have to be resolved in any event if the hospital were to move for an order remanding the case to the state courts, and indeed Holzsager may well have chosen to raise them on a motion to strike precisely because the hospital has made no motion to remand, quite possibly in the hopes that the case would continue in limbo forever.

The hospital's contention that Holzsager's motion is barred by laches is equally without merit. The hospital is at least as responsible as Holzsager for the delay that has ensued since Judge Meanor's order was entered. Certainly it was free to act if it foresaw that the delay would prejudice it in any way. Moreover, the only example of "prejudice" to it that the hospital recites in asserting laches—the dismissal of its third party action against the physician who treated Mr. Holzsager—is unrelated to that delay. That dismissal was without prejudice; whatever cause of action the hospital may have had against the doctor could have been asserted at any time subsequent to the dismissal. If it cannot be asserted now for some reason, the hospital has only itself to blame.

mand the case to New York Supreme Court, as suggested by Judge Meanor. The hospital contends that it does not—that Judge Meanor's decision and order left this court with authority to do nothing other than the purely ministerial task of remanding to the state courts. We disagree.

First, it is quite clear that what the hospital suggests is not what Judge Meanor intended. His order provides simply that the case be "remanded" to the Southern District of New York "for appropriate action." At the hearing at which he reached his decision, he indicated only that he would retransfer the case "with a suggestion to Judge Lasker, or whatever judge to whom it is assigned in that court, that it would probably be appropriate to remand it under the circumstances to the New York State courts from whence it came." This statement is far too tentative to support an argument that Judge Meanor intended his "suggestion" to be binding.

Second, even if Judge Meanor had intended to bind this court, he lacked the power or authority to do so. As he clearly recognized, any attempt by one district court to circumscribe the authority of a coordinate court would be *ultra vires*. It is quite true that if Judge Meanor was correct in concluding that the federal courts lack subject matter jurisdiction over this case, anything this court were to do (other than remand the case to the state courts) would be a nullity—not because of Judge Meanor's ruling to that effect, but because in the absence of subject matter jurisdiction the federal courts lack the authority to adjudicate at all. At present, however, the issue determined by Judge Meanor is properly before this court, and unless barred by res judicata or estoppel principles, the court has the authority to redetermine it.

## II.

■ The hospital contends that reconsideration of Judge Meanor's determination that the hospital's liability is limited by New Jersey's charitable immunity statute is barred by the doctrines of res judicata and collateral estoppel.

Res judicata prevents a party from bringing a second suit on a claim that was decided in a previous action. Collateral estoppel prevents a party from relitigating issues of fact or law that were actually litigated and were necessary to a prior judgment, even if the second suit is based on a different cause of action. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876); *see generally* 1B J. Moore, Federal Practice and Procedure ¶ 0.405–.448 (1965); Restatement (Second) of Judgments, ch. 3 (Tent. Draft No. 1, 1973); Developments in the Law-Res Judicata, 65 Harv.L.Rev. 818 (1952). Both doctrines apply only after a final judgment has been rendered. Their function is to preclude relitigation of what has been finally adjudicated, and consequently they come into play only after a case has gone to judgment. 1B J. Moore, Federal Practice and Procedure ¶ 0.404[1] at 404–05 (1965); *see Miller Manufacturing Co. v. Zeiler*, 45 N.Y.2d 956, 958, 411 N.Y.S.2d 558, 559, 383 N.E.2d 1152, 1153 (1978) ("It is, of course, axiomatic that a party seeking to assert res judicata or claim preclusion must show the existence of a prior judgment on the merits.").

The hospital argues that Judge Meanor's decision and order constituted a final judgment disposing of Holzsager's claim because it left this court with no authority to do anything other than remand the case to the state court from which it was originally removed. We have already noted that this is not so, but even if it were Judge Meanor's decision would not be a final judgment, since the case would continue before the state court. To argue that a remand to the state court would constitute a final adjudication of Holzsager's wrongful death claim is ludicrous. Indeed, except to the extent that it felt bound to accept Judge Meanor's determination as the law of the case, the state court might well reconsider it—not, of course, to determine whether federal jurisdiction exists but to determine

whether any recovery against the hospital should in fact be limited to $10,000. Thus, even if Judge Meanor's order had the effect attributed to it by the hospital, it would not be a final judgment.

Nothing makes this more clear than the fact that Holzsager could not have appealed from Judge Meanor's order (although the hospital believes she could have, Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike Affirmative Defenses at 9, 18). "[A]n order transferring an action under [28 U.S.C.] § 1404(a), an order denying transfer, and an order retransferring an action after it has been transferred under § 1404(a) are all interlocutory," and cannot be appealed under 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a), or the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). 7B J. Moore, Federal Practice and Procedure § 1404 at 612–13 (1966); *see* 1 *id.* ¶ 0.147 at 1694 (1974). Even if Judge Meanor's order were construed to be one remanding the case directly to the New York Supreme Court, no appeal from it would lie: 28 U.S.C. § 1447(d) provides that except in civil rights actions "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."

It is patent, then, that Judge Meanor's order was not a final judgment, and does not bar reconsideration of the issue decided. It is true that had Judge Meanor dismissed Holzsager's action, rather than retransferring it to the Southern District of New York, his action would have constituted a final judgment, and would collaterally estop relitigation of the issues actually decided (though it would not be res judicata, barring further suit against the hospital on Holzsager's wrongful death claim). This would be true even if Judge Meanor's decision were incorrect, and even if Holzsager sought to press arguments in the subsequent action that she had not raised in the earlier proceeding. But this is not a subsequent action; it is the same action, and neither res judicata nor collateral estoppel has any application here.

The related doctrine that does apply is that of "the law of the case." This is a species of *stare decisis*. Just as a rule of law, once announced by a court, is generally binding on that court and courts inferior to it in subsequent cases, so a particular resolution of a legal issue in a case will usually be treated as conclusive in subsequent proceedings in the same case. But just as a court is not inexorably bound by its own precedents, so it need not necessarily adhere to prior rulings in a case. 1B J. Moore, Federal Practice and Procedure ¶ 0.404[1] (1965). This is so even when the prior ruling in the case was made by a different judge:

> "Although a judge should not ordinarily disturb previous rulings of another judge in the same case, 'the law of the case' rule is not so inflexible as to permit of no exception. Certainly it should not prevent the discharge of a judge's obligation to present an appellate court with the judgment he believes ought to be rendered in the case."

*Rodriguez v. Olaf Pedersen's Rederi A/S*, 387 F.Supp. 754, 757 (E.D.N.Y.1974), *aff'd*, 527 F.2d 1282 (2d Cir. 1975); *accord, Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134–36 (2d Cir. 1956) (L. Hand, J.); *Slotkin v. Citizens Casualty Co.*, 447 F.Supp. 253, 257 (S.D.N.Y.1978); *Goldstein v. Doft*, 236 F.Supp. 730, 731 (S.D.N.Y. 1964), *aff'd*, 353 F.2d 484 (2d Cir. 1965); 1B J. Moore, Federal Practice and Procedure ¶ 0.404[8] at 536–37 (1965).

Holzsager argues that reconsideration of Judge Meanor's prior ruling in this case is especially appropriate because she neglected to raise before him the choice of law arguments that she claims require a different decision on the issue. Although prior judicial rulings should not as a matter of course be reconsidered simply because counsel overlooked an argument supporting a client's position, they should not be accorded undue weight, particularly when they touch on issues so central to a case as those involved here. *See id.* ¶ 0.404[4] at 453–55. We conclude that in the circumstances of this case it is appropriate to reconsider

Judge Meanor's ruling in the light of Holzsager's new arguments, and, if those arguments show it to be erroneous, to correct the error.

## III.

■ Neither Holzsager nor the hospital suggested before Judge Meanor that New York law might affect the question before him, and there is no indication that he considered New York law in determining that New Jersey's charitable immunity statute limits the hospital's potential liability to $10,000. The hospital concedes, however, as it must, that New York's conflicts law does govern in this diversity case, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and that it did so in the proceedings before Judge Meanor in New Jersey, *Van Dusen v. Barrack*, 376 U.S. 612, 626–40, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), as well as here. Holzsager contends that under the choice of law principles developed in New York, the hospital's limited liability under New Jersey law would not be recognized in a New York court, and that accordingly Judge Meanor erred in ruling that her case is not within the subject matter jurisdiction of the federal courts.

The question is whether a New York court seized of this case would apply New York law or New Jersey law in assessing damages. In resolving choice of law questions, the New York courts have adopted an approach that requires an analysis of the interests which the laws of each state with some connection to the dispute seek to promote, and a determination, based on each state's relationship to the parties and the underlying transaction or occurrence, of "which of those jurisdictions has the paramount interest in the application of its law." *In re Estate of Crichton*, 20 N.Y.2d 124, 133, 281 N.Y.S.2d 811, 819, 228 N.E.2d 799, 805 (1967); *see Neumeier v. Kuehner*, 31 N.Y.2d 131, 335 N.Y.S.2d 64, 286 N.E.2d

454 (1972); *Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969); *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Long v. Pan American World Airways*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).[4]

In determining whether to apply New Jersey's charitable immunity statute here, "the New York courts would balance against the New York interest in protecting its domiciliaries against wrongful death limitations" the interests of New Jersey in limiting the liability of non-profit hospitals for injuries caused by their negligence. *Rosenthal v. Warren*, 475 F.2d 438, 444 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). The hospital does not argue that a New York court would accord New Jersey's interest much weight. This is not surprising:

> "[E]xcept for a federal case which relied heavily on a discredited state case, the strong New York public policy against damage limitations has triumphed over the contrary policies of sister states in every case where a New York domiciliary has brought suit. This conclusion is particularly striking in wrongful death actions where the New York policy, embedded in a state constitutional provision against damage limitations, has without exception been applied in suits brought for New York decedents since *Kilberg* [*v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961)].

*Id.* at 443; *see O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978) ("we see no indication that the highest court of New York has wavered in its determination to afford New York tort

4. The New York courts do not feel constrained to apply the whole law of one jurisdiction in a given case, and characteristically engage in *depecage*. Thus, Holzsager's motion places in issue only the question whether a New York court would apply New York law with regard to the hospital's potential liability, not whether New York law governs other issues, such as the standard of care to which the hospital is to be held in treating patients.

plaintiffs the benefit of New York law more favorable than the law of the *lex loci delictus* whenever there is fair basis for doing so"); *cf. Schwartz v. Boston Hospital for Women*, No. 71 Civ. 1562, slip op. at 4–6 (S.D.N.Y. Sept. 26, 1977) (Massachusetts charitable immunity statute will not be applied to limit Massachusetts' hospitals' liability in malpractice suit brought by New York resident in New York).[5] Instead, the hospital argues that New Jersey law must be applied here because New York has no interest in this controversy, since Holzsager did not become a New York resident until after her husband's death.[6]

The hospital's argument is wholly unpersuasive. New York has made it clear that in its view limitations on wrongful death recoveries are " 'absurd and unjust,' " *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 40, 211 N.Y.S.2d 133, 136, 172 N.E.2d 526, 528 (1966) (quoting Justice Hatch in *Medinger v. Brooklyn Heights R.R.*, 6 App. Div. 42, 46, 39 N.Y.S. 613, 616 (1896)); *see Bing v. Thunig*, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (1957), and that such limitations will be denied effect "whenever there is a fair basis for doing so." *O'Connor, supra*, 579 F.2d at 205. Holzsager's current residence in New York provides such a ba-

sis, and the fact that neither she nor her husband were residents of New York at the time he died is simply irrelevant. The state in which a plaintiff currently resides is the state that may have to shoulder the burden of providing care and assistance to the plaintiff in the event full compensation cannot be obtained from a tortfeasor. Clearly that state has an interest in ensuring that full compensation be paid. And when a state chooses to protect its interest, as New York has, by incorporating into its law a provision disapproving limitations on liability in wrongful death actions, N.Y.Const. art. I, § 16, it clearly has a "fair basis" for applying that law in its own courts. *See Pacific Employers Insurance Co. v. Industrial Accident Commission*, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939).

In sum, New York has no less interest in seeing its law respecting limitations of liability applied in the case of a plaintiff who became a New York resident after her cause of action arose than in the case of a plaintiff who was a New York resident all along. Since the New York precedents establish that in the latter case New York law would be applied, we conclude that a New York court would apply its own law here. Accordingly, we hold that the hospital's po-

---

5. The hospital argues that the New York courts' willingness to override foreign law is diminishing, relying on *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699–700, 405 N.Y. S.2d 441, 442–43, 376 N.E.2d 914, 915 (1978); *Belisario v. Manhattan Motor Rental, Inc.*, 48 A.D.2d 477, 370 N.Y.S.2d 574, 575–77 (1st Dept. 1975); *Arneil v. Ramsey*, 550 F.2d 774, 779–80 (2d Cir. 1977); and *Chiarello v. Domenico Bus Service, Inc.*, 542 F.2d 883, 886 n.5 (2d Cir. 1976). We find very little support for the hospital's argument in these cases, and nothing which suggests that the New York courts are likely to look on foreign state's limitations on liability with less jaundiced eye than they have in the past.

The hospital's reliance on *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967) (*en banc*), is more justified, but equally unavailing. We find unpersuasive the suggestion in *Reich* that a state in which a plaintiff takes up residence after the plaintiff's cause of action arises can have no interest in seeing its law applied, and, in any event, we find that the New York courts would disagree with the California Supreme Court on this point. *See* Note, *Post Transaction or Occurrence Events in Con-*

flict of Laws, 69 Colum.L.Rev. 843, 850–51 (1969). Moreover, *Reich* involved a situation very different from that here, and is clearly distinguishable.

6. Holzsager and her husband were born, raised and educated in New York. They were married in New York in 1961, and their four children were born here. In March 1974 Mr. Holzsager was promoted to a position requiring him to work in New Jersey, and in September, 1974, he and his family moved to New Jersey. He died less than four months later. In August, 1976, Holzsager and her children returned to New York, and shortly thereafter she commenced this action. We do not believe that Holzsager's earlier connection with New York provides any basis for applying New York law here—it is relevant only because it substantiates her claim that she has become a bona fide resident of New York, a claim that the hospital disputed on its first motion to dismiss for lack of diversity jurisdiction (and apparently continues to dispute despite the ruling to the contrary in our endorsement dated March 18, 1977).

tential liability is not limited to $10,000., and that Holzsager's suit is within the subject matter jurisdiction of the federal courts.[7]

## IV.

■ Of course, a court must have personal jurisdiction over a defendant as well as subject matter jurisdiction over the plaintiff's suit. As noted above, jurisdiction over the hospital was acquired here under the doctrine of *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), by attaching the insurance obligation owed the hospital by its liability insurance carrier, which does business in New York. The New York Court of Appeals, noting that "grave constitutional doubts" have been expressed concerning *Seider* jurisdiction where "the plaintiff seeking the attachment was not a resident of New York," *Donawitz v. Danek*, 42 N.Y.2d 138, 141, 397 N.Y.S.2d 592, 594, 366 N.E.2d 253, 255 (1977) (citing *Minichiello v. Rosenberg*, 410 F.2d 106, 110 (2d Cir.) (Friendly, J.), *aff'd en banc*, 410 F.2d 117 (2d Cir.), *cert. denied*, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969); *Farrell v. Piedmont Aviation, Inc.*, 411 F.2d 812, 816 (2d Cir. 1969); *Vaage v. Lewis*, 29 A.D.2d 315, 318, 288 N.Y.S.2d 521, 524 (2d Dept. 1968)), has limited *Seider* jurisdiction to cases brought by New York residents. *Id.* at 142, 397 N.Y.S.2d at 595. Similarly, in *Farrell v. Piedmont Aviation, Inc.*, 411 F.2d 812 (2d Cir. 1969), Judge Friendly concluded that *Seider* jurisdiction was not available to nominal plaintiffs who, though New York residents, were simply administrators of the estates of nonresident decedents, whose beneficiaries were also nonresidents, suggesting that in view of "New York's lack of meaningful contact with the claim," an as-

sertion of jurisdiction under *Seider* would be unconstitutional. *Id.* at 817.

Drawing on these precedents, the hospital asserts that in this suit, by a plaintiff who was not a New York resident at the time her cause of action arose,[8] jurisdiction over it cannot be acquired under the *Seider* doctrine. The question is whether New York can, consistent with the United States Constitution, allow plaintiffs who become New York residents only after their causes of action arise to invoke *Seider* to acquire personal jurisdiction over nonresident defendants, and, if it can, whether the New York courts would sanction such a procedure.[9]

To answer this question, we must first isolate the constitutional objections to the assertion of *Seider* jurisdiction by nonresident plaintiffs, and determine whether they apply with equal force to plaintiffs who became New York residents after their causes of action arose. This in turn requires analysis of the current rationale for the *Seider* doctrine, which has developed since the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), cast doubt on the doctrine's continued viability. That rationale is based on the recognition that in *Seider* actions the real dispute is between the plaintiff and the insurance company obligated to defend the named defendant in the plaintiff's action. The New York Court of Appeals recently summarized the rationale as follows:

> "[T]he primary risks and burdens of defending a *Seider*-type action rest on the insuror, who does business in New York, and over whom even personal jurisdiction may be obtained. The burdens on the

---

**7.** The hospital objects that our holding will encourage forum shopping. See note 12, *infra*.

**8.** See note 6, *supra*.

**9.** We are aware of only three cases involving *Seider* attachments obtained by plaintiffs who were not residents of the forum state at the time the cause of action arose: *Fish v. Bamby Bakers, Inc.*, 76 F.R.D. 511 (N.D.N.Y.1977) (vacating the attachment); *Savchuk v. Rush*, 311 Minn. 480, 245 N.W.2d 624 (1976), *vacated and*

*remanded (for further consideration in light of Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)), 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977), *decision on remand*, 272 N.W.2d 888 (Minn.1978), *prob. juris. noted*, 440 U.S. 905, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979) (upholding the attachment); *Erneta v. Princeton Hospital*, 66 A.D.2d 669, 411 N.Y. S.2d 13 (1st Dept. 1978) (same). The areas of our agreement and disagreement with these decisions are apparent from our opinion.

nonresident insured, although existent, are not sufficient to prevent, constitutionally, the New York courts from adjudicating a dispute principally between a New York plaintiff and an insurance company doing business in New York." [10]

*Baden v. Staples*, 45 N.Y.2d 882, 891, 410 N.Y.S.2d 808, 809, 383 N.E.2d 110, 111 (1978); *see O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 197–202 (2d Cir.) *cert. denied*, 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978); *Alford v. McGaw*, 61 A.D.2d 504, 402 N.Y.S.2d 499, 502 (4th Dept.), *appeal dismissed*, 45 N.Y.2d 776 (1978); *cf. Minichiello v. Rosenberg*, 410 F.2d 106, 109–10 (2d Cir. 1968) (Friendly, J.), *aff'd en banc*, 410 F.2d 117 (2d Cir.), *cert. denied*, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969); *see generally* Silberman, Shaffer v. Heitner: *The End of an Era*, 53 N.Y.U.L.Rev. 33, 90–101 (1978).

The key constitutional issue is whether it is fair for New York to oblige the insuror to defend the action *in New York* even though "the nonresident insured . . . who has to be named as a defendant in order to provide a conceptual basis for getting at the insurer," *Minichiello v. Rosenberg, supra,* 410 F.2d at 109, could not be compelled to do so. It is in this regard that the plaintiff's residence is important, for it is fair for New York to do so only if New York has some legitimate interest in the litigation. Unless New York has some such interest,

the simple fact that the insurance company does business in New York would not constitutionally justify New York intervening so substantially in the company's affairs. *See Watson v. Employers Liability Assurance Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954). It is because and only because the plaintiff lives in New York that New York's interests are involved.

The question here is whether New York's interests are involved in a suit by a plaintiff who was not a New York resident when the cause of action arose, but was when the suit was commenced. We think that they are. As noted earlier in our discussion of choice of law, New York has an interest in ensuring that it is not saddled with the burden of caring for individuals injured by negligent nonresidents. Thus, it has an interest in providing its residents a convenient forum in which to seek compensation from those nonresidents' liability insurance carriers. The plaintiff's residence at the time of injury is irrelevant to this concern—what is important is the individual's residence at the time the action is commenced, since it is the state which is most likely to bear the burden of caring for the plaintiff in the event compensation cannot be obtained from the tortfeasor.[11]

Moreover, in view of this interest, we believe the New York courts generally will follow the decision in *Erneta v. Princeton Hospital*, 66 A.D.2d 669, 411 N.Y.S.2d 13 (1st Dept. 1978), the only case in which a

---

**10.** The burdens on the nonresident insured are considered minimal primarily because it stands to lose no money as a result of an adverse ruling in a *Seider* action: the plaintiff's recovery is limited to the face value of the defendant's liability insurance policy, *Simpson v. Loehmann*, 21 N.Y.2d 305, 310, 287 N.Y.S.2d 633, 636, 234 N.E.2d 669, 671 (1967), *reargument denied*, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968), and, it is generally believed, a judgment for the plaintiff could not be given collateral estoppel effect in a subsequent suit brought elsewhere, *see O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 201–02 (2d Cir.), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978) (quoting *Minichiello v. Rosenberg*, 410 F.2d 106, 111–12 (2d Cir. 1968), *aff'd en banc*, 410 F.2d 117 (2d Cir.), *cert. denied*, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969)). *But see Lee-Hy Paving Corp. v.*

*O'Connor*, 439 U.S. 1034, 1037–38, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978) (Powell, J., dissenting from denial of certiorari).

**11.** *Erneta v. Princeton Hospital*, 66 A.D.2d 669, 411 N.Y.S.2d 13 (1st Dept. 1978), a case involving facts very similar to those of this case, in which the court upheld *Seider* jurisdiction on behalf of a plaintiff who, like Holzsager and her husband, suffered injury because of alleged malpractice by a New Jersey hospital, illustrates this point. There it was alleged that the plaintiff, "who suffered severe brain damages from the claimed malpractice, is presently being treated at New York City hospitals and that her schooling, therapy, and guidance are to a large degree being subsidized by the City and State of New York." *Id.* at 670, 411 N.Y.S.2d at 14.

state court has addressed the issue. There the court concluded "that plaintiffs' non-residence in New York at the time of the alleged malpractice is [not] a factor sufficient to deny them the right to the *Seider v. Roth quasi in rem* attachment remedy." We believe this is the position the New York courts will abide by, although we are fully aware that the New York Court of Appeals has indicated that the *Seider* doctrine should not be expanded, *Donawitz v. Danek*, 42 N.Y.2d 138, 142, 397 N.Y.S.2d 592, 595, 366 N.E.2d 253, 255 (1977), and that it adheres to the doctrine primarily for reasons of *stare decisis, Baden v. Staples, supra,* 45 N.Y.2d at 892–93, 410 N.Y.S.2d at 809–810, 383 N.E.2d at 111–112; *Donawitz v. Danek, supra,* 42 N.Y.2d at 141–42, 397 N.Y.S.2d at 594–95, 366 N.E.2d at 255–56, because we believe that so long as *Seider* is not overruled, its benefits will not be arbitrarily denied the class of New York residents who came to New York only after their cause of action arose.[12]

In sum, we conclude that an assertion of *Seider* jurisdiction over the hospital is constitutionally permissible, and that a New York court would choose to exercise such jurisdiction in the circumstances of this case. Accordingly, we hold that personal jurisdiction over the hospital has been established.

\*     \*     \*     \*     \*     \*

For the reasons stated, the plaintiff's motion to strike the defendant's fifth and ninth affirmative defenses is granted. Treating the defendant's submissions in opposition to the plaintiff's motion as a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), that motion is denied. Discovery should proceed forthwith, as provided in the Federal Rules of Civil Procedure.

It is so ordered.

---

12. The hospital contends that the sum of our holdings will encourage forum shopping. So long as neighboring states pursue divergent policies, forum shopping will be inevitable, and, in any event, whatever weight should be accorded the hospital's policy arguments, it is not sufficient to override the other concerns we have discussed, which we believe dictate the decision we have reached.